IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| AMANDA DARLINGTON, )<br>*individually and as Administratrix of the* )<br>*Estate of A.H., a deceased minor,* )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>HARBOUR EAST VILLAGE LLC, )<br> )<br>Defendant. ) | Civil Action No. 3:20cv157–HEH |

## MEMORANDUM OPINION
(Granting Defendant's Motion to Dismiss)

This matter is before the Court on Harbour East Village LLC's ("Defendant") Motion to Dismiss (the "Motion"), filed on March 6, 2020 (ECF No. 4). Plaintiff Amanda Darlington, acting in her individual capacity ("Darlington"), as well as in her representative capacity as the Administratrix of the Estate of A.H. ("Administratrix"), filed this suit against Defendant in the Chesterfield County Circuit Court on February 4, 2020, bringing claims for wrongful death[1] and intentional infliction of emotional distress (Compl., ECF No. 1-1).[2] Defendant subsequently removed the case to this Court on March 4, 2020 (ECF No. 1). The parties have filed memoranda supporting their

---

[1] In Plaintiff's Complaint, her first claim is "Negligence/Wrongful Death." (Compl. at 3.) Properly stated, this claim is one for wrongful death, *see infra* note 8.

[2] Plaintiff qualified as the Administratrix of the Estate of A.H. before the Chesterfield County Circuit Court on May 4, 2018 (ECF No. 22). At the Court's request, Plaintiff filed the Certificate of Qualification with this Court on July 7, 2020.

respective positions (ECF Nos. 5, 18), and the Court heard oral argument on June 30, 2020. For the reasons that follow, the Court will grant Defendant's Motion.

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true, and views all facts in the light most favorable to her. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The Court notes that, throughout the Complaint, Plaintiff references a signed Manufactured Home Lot Rental Agreement (the "Agreement") but has failed to attach it to her Complaint. However, Defendant did attach the Agreement to its Motion to Dismiss.[3] (*See* Def.'s Mem. Supp. Mot. Dismiss Ex. A [hereinafter the Agreement], ECF No. 5-1.) Therefore, the Court will consider the Agreement in addressing Defendant's Motion.

On July 26, 2017, Darlington purchased a mobile home. (Compl. ¶¶ 8–9.) Shortly thereafter, on September 1, 2017, Darlington entered into the Agreement with Defendant to rent the mobile home lot 68 at 820 Cliffside Drive, Chester, Virginia ("Lot 68"). (*Id.* ¶ 11.) Following these arrangements, Darlington lived on this property in Chesterfield County, Virginia in her new mobile home with her son, A.H. (*Id.*)

---

[3] Generally, the district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). The court may, however, consider "documents incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), as well as documents attached to a motion to dismiss, so long as they are integral to or explicitly relied upon in the complaint, and the authenticity of such documents is not disputed. *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

Darlington alleges that the prior residents of Lot 68 had complained to Defendant about a nearby tree, claiming that it posed a threat to them and to their mobile home because it was decaying. (*Id.* ¶ 14.) The prior residents allegedly requested a minimum of three times—once in 2016, 2017, and 2018—that Defendant remove the tree. (*Id.* ¶ 15.) In response, Darlington claims that Defendant said it would do so. (*Id.* ¶ 16.) Darlington alleges that, despite these requests, the tree was not removed before she and her son moved to Lot 68. (*Id.* ¶ 20.) Darlington claims that she, too, requested that Defendant remove the tree. (*Id.* ¶ 23.)

On March 2, 2018, the tree fell through the roof of Darlington's mobile home, crushing A.H. (*Id.* ¶ 20.) Emergency personnel responded, and took A.H. to the hospital, but he did not survive the tragic accident. (*Id.* ¶ 20.) This action arises out of A.H.'s death. Plaintiff Administratrix asserts a claim for wrongful death, and Plaintiff Darlington asserts a claim for intentional infliction of emotional distress. Defendant now seeks to dismiss the Complaint.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual

3

allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570. In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to her. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I. Plaintiff's claims are properly joined and should not be merged under Virginia law.

The Supreme Court of the United States has determined that the rules of joinder regulate procedure. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 599 U.S. 393, 406–08 (2010) ("[W]e think it obvious that rules allowing multiple claims (and claims by or against multiple parties) to be litigated together are also valid . . . . [because the Rules] leave[] the parties' legal rights and duties intact and the rules of decision unchanged." (citing Fed. R. Civ. P. 18, 20, and 42(a))). Thus, the issues presented by Defendant, regarding party and claim joinder, are both governed by federal—rather than state—law.[4]

The issue of whether an administratrix, acting in her representative capacity, may join a claim with one she brings in her individual capacity—while she is the sole

---

[4] The Court believes that the application of these principles is not changed by the fact that this case was removed from state court, and this position is strengthened by the fact that other procedural issues arising in cases of removal have been determined to be at least "committed to the sound discretion of the district court." *Cf. Mayes v. Rapoport*, 198 F.3d 457, 462–63 (4th Cir. 1999) (discussing the applicability of the doctrine of fraudulent joinder following removal); 28 U.S.C. § 1447(e).

beneficiary of the decedent's estate—appears to be an issue yet to be addressed by the United States Court of Appeals for the Fourth Circuit.[5] While courts have made clear that it is permissible for an individual to serve as an administratrix of an estate although she is also the sole beneficiary of that estate, *see Helvering v. Helmholz*, 296 U.S. 93, 94 (1935); *Gordon v. Gilfoil*, 99 U.S. 168, 172 (1878); *Carter v. Pellicane*, No. 3:19-104-CMC-SVH, 2019 WL 7019302, at *4 (W.D.N.C. Dec. 20, 2019), precedent involving such a party plaintiff who also joins her claims in her individual capacity is sparse. Therefore, because of the lack of controlling law, the Court's resolution of this issue is guided by the persuasive authority available.

A party who sues in her official capacity is considered to be legally distinct from that same party when she also brings a claim in her individual capacity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (distinguishing between suits against a person in his official and individual capacities for the purposes of suits brought pursuant to 42 U.S.C. § 1983 (citing *Kentucky v. Graham*, 473 U.S. 159, 163, 166 (1985))); *cf. Reineck v. Lemen*, 792 S.E.2d 269, 275 (Va. 2016) ("A person who sues [] in his official or representative capacity is, in contemplation of law, regarded as a person distinct from the same person in his individual capacity . . . ."); *Swann v. Marks*, 476 S.E.2d 170, 172 (Va. 1996) ("The personal representative of a decedent and the decedent's 'estate' are two separate entities; the personal representative is a living individual while the 'estate' is a collection of property."). Therefore, in this case, Plaintiff Administratrix and Plaintiff Darlington must

---

[5] It appears to the Court that Darlington is the sole beneficiary of the Estate of A.H.; however, she failed to identify the statutory beneficiaries.

5

be considered to represent two different entities in the eyes of law as she brings a claim for wrongful death on behalf of A.H.'s estate, and she also brings a claim for intentional infliction of emotional distress on her own behalf.

Federal Rule of Civil Procedure 20(a)(1), the Rule permitting persons to "join in one action as plaintiffs," thus governs the propriety of Plaintiff's party joinder. As a result, Defendant's contention that these parties were misjoined fails. Both claims arise out of the accident during which A.H. died—therefore involving not only the same occurrence but also common questions of fact. Fed. R. Civ. P. 20(a)(1); *see Plant v. Merrifield Town Ctr. Ltd. P'ship*, 794 F. Supp. 2d 404, 409 (E.D. Va. 2009). Thus, the Federal Rules fail to provide an obstacle for Plaintiff's party joinder.

Furthermore, this Court finds that existing authority—although it is merely persuasive and not binding—counsels against Defendant's position. *See William v. The AES Corp.*, 28 F. Supp. 3d 553, 572–75 (E.D. Va. 2014); *Dent v. Roanoke City Sheriff's Office*, 585 F. Supp. 2d 844, 861–64 (W.D. Va. 2008); *Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 299 (D.D.C. 2006) (involving various plaintiffs who joined their wrongful death and intentional infliction of emotional distress claims). Therefore, as Defendant fails to cite any law that supports its contention that the parties are misjoined, this Court finds that Defendant's contention that Plaintiff improperly joined these two actions is without merit, and party joinder is proper in this case.[6]

---

[6] Furthermore, the Court notes that, if it did not permit Plaintiff to proceed upon each of these claims in this case, Plaintiff may later encounter issues regarding preclusion. Preclusion does not apply only to the claims brought in the immediate case but also applies to claims that *could* have

Defendant further contends that Plaintiff's claims themselves—the estate's claim for wrongful death and the claim for intentional infliction of emotional distress—must be merged. Yet, apart from citing Virginia's wrongful death statute itself, Va. Code Ann. § 8.01-50 *et seq.*, Defendant cites no law supporting its proposition. Defendant's contention is rendered further futile as this Court has already explained that this is an issue governed by federal, rather than state, law. However, to the extent Defendant contends that this issue affects the substantive rights of the parties because Va. Code Ann. § 8.01-52 provides for recovery based upon emotional distress, *see* Def.'s Mem. at 9, this Court finds that Plaintiff's claim in her individual capacity for intentional infliction of emotional distress is not merged with the estate's claim for wrongful death as a claim for intentional infliction of emotional distress is a claim separate and apart from a claim for wrongful death under Virginia law. *Compare Antisdel v. Ashby*, 688 S.E.2d 163, 167–68 (Va. 2010) (discussing that wrongful death claims are brought by administrators of a decedent's estate on behalf of the beneficiaries of a decedent's estate), *with Ruth v. Fletcher*, 377 S.E.2d 412 (Va. 1989) (involving a claim for intentional infliction of emotional distress brought by a plaintiff in his individual capacity).[7]

---

been brought. *See Davis v. Commonwealth Trustees, LLC*, No. 3:19-cv-554–HEH, 2019 WL 6179223 (E.D. Va. Nov. 20, 2019).

[7] Furthermore, even if these claims should be merged under Virginia law, Plaintiff's procedural error is innocuous as Plaintiff Darlington fails to state a claim for intentional infliction of emotional distress, *see infra*.

## II. Plaintiff Administratrix's wrongful death claim must fail because Plaintiff Administratrix fails to sufficiently allege a common law or statutory duty.

Plaintiff Administratrix's principal claim is one for wrongful death.[8] Because this Court's jurisdiction is based on diversity of citizenship, the substantive law of Virginia governs. *Benner v. Nationwide Mut. Ins.*, 93 F.3d 1228, 1234 (4th Cir. 1996). To recover in a wrongful death action, a plaintiff must show that the defendant was negligent, and that the defendant's negligence was the proximate cause of the decedent's death. *Bowers v. Bristol Gas & Elec. Co.*, 42 S.E. 296, 297 (Va. 1902). Defendant contends that it owed Darlington no more than a contractual duty, and that therefore Plaintiff Administratrix's claim must fail.[9]

The parties' relationship was premised upon the Agreement, which situated Darlington as tenant and Defendant as landlord of Lot 68. (*See* Agreement.) In order for

---

[8] This claim is fashioned as one for "Negligence/Wrongful Death." (Compl. at 3.) A wrongful death claim is the vehicle for a posthumous negligence claim. *See Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991) ("Virginia's wrongful death statute does not create a new cause of action, but only a right of action in a personal representative to enforce the decedent's claim for any personal injury that caused death."). "The statute provides that whenever the death of a person is caused by 'the wrongful act, neglect, or default of any person or corporation' that person or corporation shall be liable for damages." *Thornhill v. Aylor*, No. 3:15-CV-00024, 2016 WL 8737358, at *12 (W.D. Va. Feb. 19, 2016) (quoting Va. Code Ann. § 8.01-50). If Plaintiff Administratrix intended to proceed on these claims independently, her claims must be merged because the parties do not appear to dispute the cause of death. *See Centra Health, Inc. v. Mullins*, 670 S.E.2d 708, 718 (Va. 2009); *see generally McGuin v. Mount Vernon Nursing Ctr. Assocs., L.P.*, No. 160037, 1998 WL 972115 (Va. Cir. Feb. 17, 1998) (explaining that a plaintiff may recover upon only one theory alone—wrongful death or negligence—but that a plaintiff may proceed to trial on both theories where there remains a conflict in the evidence regarding the cause of death). Therefore, the Court will construe Plaintiff Administratrix's claim for "Negligence/Wrongful Death" as solely one for wrongful death caused by Defendant's negligence.

[9] To successfully state a claim for wrongful death, however, Plaintiff must demonstrate that Defendant owed A.H.—not Darlington—a common law or statutory duty. Because the Court finds Defendant did not owe Darlington a duty, it also finds Defendant did not owe A.H. a duty.

8

Plaintiff Administratrix to successfully demonstrate that Defendant was negligent, however, any duty must have arisen beyond the bounds of the Agreement. *See Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998) ("[T]he duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." (citation and quotation omitted)). Therefore, to survive Rule 12(b)(6) review, Plaintiff Administratrix must allege either a common law or statutory duty as the basis for her wrongful death claim against Defendant.

Without more, the parties' landlord-tenant relationship alone will not suffice to establish a common law duty. Not only was this relationship premised upon a contract, the Agreement, but the relationship itself also cedes many responsibilities to the tenant. *See Paytan v. Rowland*, 155 S.E.2d 36, 37 (Va. 1967) ("[A landlord has] no duty to maintain in a safe condition any part of the leased premises that [is] under [a tenant's] exclusive control."). The terms of the Agreement suggest that the landscape, which included the trees, was a part of the leased premises under Darlington's exclusive control. (*See* Agreement at 3 ("Tenant shall maintain and cut the lawn and maintain the landscape, plants and trees, except that such plants or trees shall not be removed or disturbed without the prior written consent of [Defendant].").)

Even if this Court construed the language of the Agreement to reserve within Defendant a right of entry to repair—which this Court believes is an overbroad interpretation of the terms of the Agreement—such "limited right of entry to repair does not displace [Darlington's] full right of possession and enjoyment of the premises . . . ." *See Steward ex rel. Steward v. Holland Family Props., LLC*, 726 S.E.2d 251, 255 (Va.

9

2012) (rejecting an allegation that, where a landlord retained the right to enter the leased premises to inspect and make necessary repairs, the tenants did not acquire the right of possession and enjoyment of the premises). Here, Defendant required only that Darlington seek the written consent of Defendant prior to removing the tree—a significantly less burdensome reservation than a right of entry to repair. As such, this Court finds that the leased premises were under Darlington's exclusive control, and accordingly Defendant did not owe Darlington—or A.H.—a common law duty.[10]

Assuming *arguendo* that Darlington's control of the landscape was not exclusive, however, Defendant's common law duty to Darlington could only be construed—at most—as a covenant to repair. Without deciding that Defendant owed such an obligation to Darlington and breached the corresponding duty, this Court believes it dispositive that Defendant's "covenant to repair [would] render [it] liable only to an action for the breach of covenant, in which recovery [would be] limited to the costs of repairs and any loss of use suffered by [Darlington] after the lapse of a reasonable time from giving the notice in

---

[10] Although the Supreme Court of Virginia has found that this issue—whether a specific area is within a plaintiff's exclusive control—may sometimes constitute a question of fact for a jury to determine, *see Paytan*, 155 S.E.2d at 38, such instances have typically involved the use of the area at issue by multiple tenants, *see Paytan*, 155 S.E.2d at 38; *Jeter v. Ark Props., LLC*, No. CL03-524, 2004 WL 2848519, at *2–3 (Va. Cir. 2004). Plaintiff Administratrix has made no such allegation here. Rather, any dispute over Darlington's degree of control over the premises stems solely from the language in the Agreement. *See* Agreement. While ambiguity in a written contract must be construed against the drafter of the agreement, *see The Doctors Co. v. Women's Healthcare Assocs., Inc.*, 740 S.E.2d 523, 526 (Va. 2013) (collecting cases), this rule of construction cannot save Plaintiff Administratrix's claim as there is no remedy in tort for violations of the parties' Agreement or the Act incorporated therein, *see infra*. Furthermore, when a court can reach a resolution without applying this rule of construction, such a resolution is preferred. *See Charles E. Russell Co. v. Carroll*, 74 S.E.2d 685, 687 (Va. 1953) ("[T]his rule of construction is not favored by the courts . . . .").

which to make repairs."[11] *See Caudill v. Gibson Fuel Co.*, 38 S.E.2d 465, 469 (Va. 1946); *Paytan*, 155 S.E.2d at 37 ("Neither does any contractual duty undertaken by a landlord to repair leased premises under a tenant's control render the landlord liable in tort for injuries sustained by the tenant as a result of the landlord's breach of a covenant to make such repairs."). Therefore, this Court finds that Plaintiff Administratrix fails to identify any common law duty owed to Darlington—or A.H.—by Defendant.[12]

Thus, Plaintiff Administratrix must allege a statutory duty as the basis for her wrongful death claim if her claim is to survive Rule 12(b)(6) review. Plaintiff Administratrix alleges that the Manufactured Home Lot Rental Act ("MHLRA"), Va. Code § 55-248.41 *et seq.*, provides a basis for a statutory duty on the part of Defendant. She claims that the terms of the MHLRA are incorporated into the Agreement, *see* Agreement at 1, as is required for them to be enforceable, *see Milian v. Worsham*

---

[11] Although Plaintiff Administratrix alleges that "[Darlington] and her predecessor had asked for the tree to be removed," *see* Compl. ¶¶ 14, 23, it is of no moment that Darlington may have made such a request as the remedy Plaintiff Administratrix seeks is not recoverable under this legal theory.

[12] Defendant further asserts that it is not liable for its failure to remove the tree because it is not liable for known defects. (Def.'s Mem. Supp. Mot. Dismiss [hereinafter Def.'s Mem.] at 6–7 (citing *Oliver v. Cashin*, 65 S.E.2d 571, 572–73 (Va. 1951)), ECF No. 5.) It appears that Darlington was aware of the tree at issue as she claims that "there was a large tree that was decaying on [L]ot 68 and blatantly and obviously posed a danger to the mobile home and residents of [L]ot 68," and that "[she] and her predecessor had asked for the tree to be removed." (Compl. ¶¶ 14, 23.) Furthermore, Darlington was given the opportunity to inspect the property prior to entering into the Agreement. (*See* Agreement at 4 ("Tenant hereby acknowledges that he has been given the opportunity to examine the Lot and that his acceptance of this Agreement is conclusive evidence that said Lot is in good and satisfactory order and repair.").) Thus, the Court agrees with Defendant, and also finds it unnecessary to give this argument extensive consideration as it has already determined that the parties' landlord-tenant relationship does not provide Plaintiff Administratrix with a basis for the relief sought.

11

*Kreynus Props., LLC*, No. 3:18-CV-724–DJN, 2019 WL 2437459, at *6, 7 (E.D. Va. June 11, 2019). Accordingly, she further alleges that, pursuant to the MHLRA as incorporated by the parties' Agreement, Defendant was responsible for "mak[ing] all repairs and do[ing] whatever [was] necessary to put and keep the manufactured home park in a fit and habitable condition," and its failure to do so was a breach of its statutory duty.

Although guidance on this issue under the MHLRA is sparse, existing analysis counsels against Plaintiff Administratrix's position. With respect to an analogous provision—the Virginia Residential Landlord and Tenant Act ("VRLTA"), Va. Code Ann. § 55-248.2 *et seq.*—the Supreme Court of Virginia has held that

> the General Assembly did not plainly manifest an intention, either through express language or by necessary implication, to abrogate the common law and make a landlord liable in tort for a tenant's personal injuries sustained on leased premises within the tenant's control and possession as a result of the landlord's breach of duties imposed by the Act. Instead, the Act provides a comprehensive scheme of landlords' and tenants' contractual rights and remedies.

*Isbell v. Commercial Inv. Assocs., Inc.*, 644 S.E.2d 72, 73, 78 (Va. 2007). At least one court has applied the same rationale to the MHLRA. *See Milian*, 2019 WL 2437459, at *6. Courts have therefore treated the terms of the VRLTA and the MHLRA as part of the parties' leases, and have found that violations of these Acts constitute a breach of those contracts. *See id.*; *Sanders v. UDR, Inc.*, No. 3:10-CV-459, 2010 WL 3927804, at *3–5 (E.D. Va. Oct. 4, 2010) ("[T]he VRLTA does not create a statutory cause of action in tort . . . ."); *see also Isbell*, 644 S.E.2d at 77 n.5 ("[I]f we adopted [the plaintiff's] position in this case, a landlord, by implication, would have a statutory cause of action in tort for

12

personal injuries sustained as a result of a tenant's failure to fulfill the duties imposed by the Act."). Accordingly, this Court finds that it does not need to consider whether Defendant owed or breached its statutory duty to Darlington or A.H. because—even if this were the case—the MHLRA provides only a remedy in contract and cannot provide Plaintiff Administratrix with a basis for her claim for relief. Thus, as Plaintiff Administratrix fails to allege a common law or statutory duty to support her wrongful death claim, her claim must fail.

### III. Plaintiff Darlington fails to state a claim for intentional infliction of emotional distress.

Even if Plaintiff's claims were improperly joined, Plaintiff Darlington fails to substantively state a claim for intentional infliction of emotional distress under Virginia law. In order to state a claim for intentional infliction of emotional distress, Plaintiff Darlington must demonstrate by clear and convincing evidence that (1) Defendant's conduct was intentional and reckless; (2) Defendant's wrongful conduct was outrageous and intolerable; (3) Defendant's wrongful conduct and Plaintiff Darlington's emotional distress were causally related; and (4) Plaintiff Darlington's emotional distress was severe. *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974); *Delk v. Columbia/HCA Healthcare Corp.*, 523 S.E.2d 826, 833 (Va. 2000). Plaintiff Darlington alleges that Defendant's "lack of action/failure to remove this unsafe tree on [L]ot 68 was clearly intentional and reckless." (Compl. ¶ 31.) Assuming without deciding that Plaintiff Darlington met the first element for a claim of intentional infliction of emotional distress,

the Court finds that Plaintiff Darlington has nevertheless failed to meet the second element.[13]

Virginia courts have made clear that the standard by which the second element is judged is exceedingly high. *See Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991); *Harris v. USAA Cas. Ins.*, No. L94-369, 1994 WL 16040308, at *4–5 (Va. Cir. Sept. 22, 1994). The *Russo* court stated:

> Under the second prong, it is insufficient for a defendant to have acted with an intent which is tortious or even criminal. Even if a defendant has intended to inflict emotional distress, or his conduct can be characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort, the requirement of the second prong has not been satisfied. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

400 S.E.2d at 162 (internal quotations and citations omitted). To satisfy this element, a reasonable person must be able to view the alleged conduct in this manner. *Almy v. Grisham*, 639 S.E.2d 182, 187 (Va. 2007).

Plaintiff Darlington alleges that Defendant's "lack of action, lack of concern for the safety of the park residents was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is atrocious and utterly intolerable in

---

[13] It is unclear whether Plaintiff Darlington's allegations satisfy the first element for a claim of intentional infliction of emotional distress under Virginia law. *Compare Harris v. USAA Cas. Ins.*, No. L94-369, 1994 WL 16040308, at *4 (Va. Cir. Sept. 22, 1994) (finding the first element satisfied where plaintiffs alleged merely that defendants' actions were "intentional and reckless" (citing *Ely v. Whitlock*, 385 S.E.2d 893, 897 (Va. 1989))), *with A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 465 (Va. 2019) (applying *Twombly*'s pleading standard). Because the second element of such a claim requires a higher standard, the Court will not decide whether Plaintiff Darlington satisfied the first element as it may determine this claim based upon the second element.

a civilized community." (Compl. ¶ 32.) As mentioned *supra*, however, Defendant did not even owe Darlington a common law duty, and the parties' relationship was merely contractual. Therefore, even if Defendant intentionally failed to remove the tree from Lot 68—which this Court did not find, Defendant's failure to remove the tree was, at most, simply a contractual failure: it did not rise to the level necessary to be considered tortious or criminal, let alone intolerable in a civilized society. *See Hammond v. Morley*, No. 3:11CV53–HEH, 2011 WL 2681231, at *4 (E.D. Va. July 8, 2011) (granting a motion under Rule 12(c) because the threshold showing required by *Russo* for the second element of a claim for intentional infliction of emotional distress "is a high hurdle to clear").

As a result, Defendant's conduct is insufficient as a matter of law to establish the second element of Plaintiff Darlington's claim, *see Russo*, 400 S.E.2d at 162, because a reasonable person could not view Defendant's conduct in the manner required to establish the second element of Plaintiff Darlington's claim. *See Almy*, 639 S.E.2d at 187 (explaining that, even in the "absence of an objective definition of the term ['outrageous,' the court] must make this threshold assessment"); *see also id.* at 33 (stating that the tort of intentional infliction of emotional distress is a "disfavored" tort (collecting cases)). Therefore, when measured against the standard detailed in *Russo*, Plaintiff Darlington's claim for intentional infliction of emotional distress must fail.

Therefore, Plaintiff Administratrix fails to state a claim for wrongful death, and Plaintiff Darlington fails to state a claim for intentional infliction of emotional distress. Accordingly, based on the foregoing analysis, Defendant's Motion to Dismiss will be

granted, and the Complaint will be dismissed.[14] Additionally, Plaintiff's Motion to Amend her Complaint will be denied.[15]

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: July 14, 2020
Richmond, Virginia

---

[14] Defendant's reservation of its right to file a Motion to Drop, as well as its allegations that Plaintiff Administratrix failed to timely attach the Certificate of Qualification and identify the statutory beneficiaries, are therefore moot and need not be addressed by the Court in this Memorandum Opinion.

[15] On July 7, 2020, Plaintiff filed a Motion to Amend her Complaint, seeking to amend her Complaint to add claims but "rel[ying on] and stat[ing] the same facts" as she did in her Complaint (ECF Nos. 21, 21-1). Permitting Plaintiff to amend her Complaint would be futile, however. Although Plaintiff's Amended Complaint contains four counts—wrongful death/negligence, common law negligence, negligence in violation of the MHLRA, and intentional infliction of emotional distress—rather than the two counts her Complaint contains, each of her four claims would fail for the aforementioned reasons in this Memorandum Opinion. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (explaining that amendment is futile when a proposed amended complaint fails to state a claim). Finally, not only would Plaintiff's amendments be futile, but permitting Plaintiff to amend her Complaint would result in substantial prejudice to Defendant. *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) ("A motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." (citing *HCMF Corp. v. Allen*, 238 F.3d 273, 276–77 (4th Cir. 2001))). Defendant's Motion has been pending for four months, and this Court heard argument on Defendant's Motion on June 30, 2020. Not to mention, Plaintiff initially failed to respond in any way to Defendant's Motion, and it was only after a May 21, 2020 Order from this Court that Plaintiff filed her Memorandum in Opposition (ECF No. 16). Plaintiff should not now be permitted to further protract this litigation, especially given that her proposed amendments would ultimately be futile. Therefore, this Court finds it would be inappropriate to permit Plaintiff to amend her Complaint. *See Davis v. Va. Commonwealth Univ.*, 180 F.3d 626, 628 (4th Cir. 1999) ("The disposition of a motion to amend is within the sound discretion of the district court." (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

granted, and the Complaint will be dismissed with prejudice.[14] Additionally, Plaintiff's Motion to Amend her Complaint will be denied.[15]

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: July 14, 2020
Richmond, Virginia

---

[14] Defendant's reservation of its right to file a Motion to Drop, as well as its allegations that Plaintiff Administratrix failed to timely attach the Certificate of Qualification and identify the statutory beneficiaries, are therefore moot and need not be addressed by the Court in this Memorandum Opinion.

[15] On July 7, 2020, Plaintiff filed a Motion to Amend her Complaint, seeking to amend her Complaint to add claims but "rel[ying on] and stat[ing] the same facts" as she did in her Complaint (ECF Nos. 21, 21-1). Permitting Plaintiff to amend her Complaint would be futile, however. Although Plaintiff's Amended Complaint contains four counts—wrongful death/negligence, common law negligence, negligence in violation of the MHLRA, and intentional infliction of emotional distress—rather than the two counts her Complaint contains, each of her four claims would fail for the aforementioned reasons in this Memorandum Opinion. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (explaining that amendment is futile when a proposed amended complaint fails to state a claim). Finally, not only would Plaintiff's amendments be futile, but permitting Plaintiff to amend her Complaint would result in substantial prejudice to Defendant. *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) ("A motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." (citing *HCMF Corp. v. Allen*, 238 F.3d 273, 276–77 (4th Cir. 2001))). Defendant's Motion has been pending for four months, and this Court heard argument on Defendant's Motion on June 30, 2020. Not to mention, Plaintiff initially failed to respond in any way to Defendant's Motion, and it was only after a May 21, 2020 Order from this Court that Plaintiff filed her Memorandum in Opposition (ECF No. 16). Plaintiff should not now be permitted to further protract this litigation, especially given that her proposed amendments would ultimately be futile. Therefore, this Court finds it would be inappropriate to permit Plaintiff to amend her Complaint. *See Davis v. Va. Commonwealth Univ.*, 180 F.3d 626, 628 (4th Cir. 1999) ("The disposition of a motion to amend is within the sound discretion of the district court." (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

16